# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KIRK KOBOS, | ) | 1:09cv0856 LJO DLB |
| | ) | |
| | ) | ORDER DENYING PLAINTIFF'S |
| | ) | MOTION TO REMAND ACTION |
| Plaintiff, | ) | (Document 11) |
| | ) | |
| v. | ) | |
| | ) | |
| SCHWAN'S HOME SERVICE, INC., et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

On May 7, 2009, Plaintiff Kirk Kobos ("Plaintiff") filed the instant motion to remand the action to state court. The matter was heard on July 31, 2009, before the Honorable Dennis L. Beck, United States Magistrate Judge. Marina Fraigun appeared telephonically on behalf of Plaintiff. Alan Rupe appeared on behalf of Defendants Schwan's Home Service, Inc. and Steve Houselog.

**PROCEDURAL BACKGROUND**

Plaintiff filed this employment action against Schwan's Home Service, Inc. ("Schwan's"), Steve Houselog ("Houselog") and Does 1 through 50 in the Kern County Superior Court on March 10, 2009. Plaintiff alleges wrongful termination in violation of public policy (California Government Code § 12940 *et seq.* and Workers Compensation Act), disability discrimination, retaliation, failure to take all reasonable steps to prevent discrimination and retaliation, violation of wage and hour law (unpaid overtime wages, failure to pay minimum

wages and waiting time penalties), unfair competition and intentional infliction of emotional distress.

Plaintiff is a resident of Kern County, California.  Defendant Schwan's is a Minnesota corporation with its principal place of business in Minnesota.  Defendant Houselog is a resident of California.

On May 14, 2009, Defendants Schwan's and Houselog removed the action to this Court based on complete diversity and fraudulent joinder.  In the notice of removal, Defendants contend that Houselog was fraudulently joined to defeat diversity jurisdiction.  Defendants answered the complaint on May 19, 2009.

Plaintiff filed the instant motion for remand on May 29, 2009, arguing that Houselog is not "fraudulently joined" and is not a "sham" defendant because Houselog harassed Plaintiff and suspended and terminated Plaintiff for engaging in protected activities.  Plaintiff also requests sanctions in the form of attorney's fees totaling $3,150.00 for defending against removal.[1]

Defendants opposed the motion on June 23, 2009.  Plaintiff did not file a reply.[2]

## **FACTUAL BACKGROUND**

According to the complaint, Plaintiff was employed by Schwan's as Route Manager.  At the time of his hire, Schwan's allegedly told Plaintiff that he would be paid on an hourly basis, making approximately $700 per week.  On or about February 22, 2008, Plaintiff began working for Schwan's and sustained a work-related injury--a broken ankle.  Plaintiff was rendered disabled and remained off work for approximately six months.  During that time, Schwan's allegedly did not inform Plaintiff of his rights under the Workers Compensation Act and did not pay him for working on February 22, 2008.  Complaint, p. 2.

On or about July 2, 2008, Defendant Houselog, the Location General Manager for

---

[1] This number is an estimate based on the declaration of Plaintiff's counsel Marina Kats Fraigun.  According to counsel, her hourly rate is $350 per hour, she spent 5 hours researching and preparing the motion to remand and expected to spend another 4 hours in drafting the reply.  Fraigun Decl. ¶ 5.  However, Plaintiff did not file a reply. At best, Plaintiff's attorney's fees total $1750 ($350 x 5) for preparation of the instant motion.

[2] On July 30, 2009, Plaintiff filed an amended motion to remand.  The amendment includes the original signature of counsel on both the motion and supporting declaration.  The original motion and declaration filed by Plaintiff's counsel did not contain a signature, electronic or otherwise.

Schwan's, allegedly called Plaintiff to tell him the company "wanted him back." When Plaintiff returned, Schwan's allegedly coerced him into signing a Release of Liability for his February 22, 2008 accident. Plaintiff then began working 12 hours per day, 5 days a week, but was paid only $600 per week. Plaintiff alleges that Schwan's mis-classified him as a salaried employee to avoid paying him overtime wages. Further, he was not given a route, but told to "knock on doors" and do sales. Complaint, p. 2.

Plaintiff purportedly re-injured his ankle while working in November 2008. He reported the injury, but Schwan's allegedly did not inform Plaintiff of his rights under the Workers Compensation Act and did not provide Plaintiff with any leave. Instead, Schwan's allegedly ordered Plaintiff to generate sales in outlying areas where no one spoke English. Defendant Schwan's also reportedly reduced Plaintiff's salary to $300 and $350 per week. Plaintiff alleges that Schwan's took these actions in retaliation for "being injured on the job and disabled." Complaint, p. 4. Plaintiff further alleges that Defendant Schwan's retaliated against him as follows: (1) Defendant Houselog took items off of Plaintiff's truck and blamed Plaintiff for missing items; (2) forced Plaintiff to pay for boots that he was never given; (3) failed to give Plaintiff credit for certain sales; (4) gave less qualified employees tasks that would generate more money; and (5) required Plaintiff to "clock out" and then go to the bank for Schwan's. Complaint, p. 3.

On or about December 8, 2008, Plaintiff was suspended for alleged insubordination. He was terminated on or about December 17, 2008. Plaintiff alleges that he was terminated because he sustained work-related injuries and was disabled. Plaintiff further alleges that he was terminated because he was entitled to workers' compensation benefits that defendants did not want to pay. Id.

Plaintiff asserts ten separate causes of action. Of those ten, Defendant Houselog is named only in the tenth cause of action for intentional infliction of emotional distress. Complaint, p. 21.

## DISCUSSION

A.    Removal Jurisdiction

By statute "any civil action brought in a State court of which the district courts of the

1 United States have original jurisdiction, may be removed by the defendant or the defendants, to
2 the district court of the United States for the district and division embracing the place where such
3 action is pending." 28 U.S.C. § 1441(a). The party seeking to invoke federal jurisdiction bears
4 the burden of establishing jurisdiction. See Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090,
5 1092 (9th Cir. 1990).

6 B.     Fraudulent Joinder

7 "The joinder of a nondiverse defendant is fraudulent or a 'sham' and does not defeat
8 jurisdiction if the plaintiff fails to state a cause of action against the defendant, and the failure is
9 obvious according to the settled rules of the state." Soo v. United Parcel Serv., Inc., 73 F.Supp.2d
10 1126, 1128 (N.D.Cal.1999) (citing McCabe v. General Foods Corp., 811 F.2d 1336, 1339 (9th
11 Cir.1987) ("fraudulent joinder is a term of art")); Ritchey v. Upjohn Drug Co., 139 F.3d 1313,
12 1318 (9th Cir. 1998) (noting that a defendant must show that "the individuals joined in the action
13 cannot be liable on any theory" or that the resident defendant had "no real connection with the
14 controversy"), cert. denied, 525 U.S. 963 (1998).

15 A party is deemed to have been joined fraudulently if, "after all disputed questions of fact
16 and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff
17 could not possibly recover against the party whose joinder is questioned." Kalawe v. KFC Nat'l
18 Management Co., 1991 WL 338566, at *2 (D.Haw. 1991) (citing Kruso v. International
19 Telephone & Telegraph Corp., 872 F.2d 1416, 1426 (9th Cir.1989), cert. denied, 496 U.S. 937
20 (1990)). If a defendant claims that other defendants were fraudulently joined, the court may go
21 beyond the pleadings to examine facts that show that the joinder is fraudulent. See Ritchey, 139
22 F.3d at 1318. "If there is a non-fanciful possibility that plaintiff can state a claim under California
23 law against the non-diverse defendants the court must remand." Macey v. Allstate Property and
24 Cas. Ins. Co., 220 F.Supp.2d 1116, 1117 (N.D.Cal. 2002).

25 C.     Analysis

26 Plaintiff contends that Defendant Houselog is not a sham defendant because he "harassed
27 Plaintiff and suspended and terminated him in retaliation for Plaintiff's engaging in protected
28 activities." Motion, pp. 6-7. To support this contention, Plaintiff includes allegations against

Defendant Houselog in the motion that are not included in the Complaint. Specifically, Plaintiff alleges in the motion that on or about December 8, 2008, Plaintiff was harassed by Defendant Houselog "for filing having [sic] a disability and because he sustained work-related injuries." Motion, p. 4. Plaintiff further alleges that after work on December 8, 2008, Defendant Houselog harassed Plaintiff "because of his disability, including making him continue working off the clock, requiring that he answer specific questions for approximately an hour about his work day although he [sic] counter part was allowed to go home and was not questioned, being told to fill out documents for the next day's route without having requisite information." Motion, pp. 4-5. Plaintiff also alleges that Defendant Houselog suspended and then terminated Plaintiff on December 17, 2008, in retaliation for having and reporting a disability. Motion, p. 5. Plaintiff concludes that because Defendant Houselog is a California resident and is not fraudulently joined, the Court does not have diversity jurisdiction and must remand the case.

As noted, Plaintiff asserts a single cause of action against Defendant Houselog for intentional infliction of emotional distress. Complaint, p. 21. Defendants argue that claims of intentional infliction of emotional distress must be dismissed where there are no ultimate facts alleging unlawful behavior or extreme and outrageous conduct. "A claim of intentional infliction of emotional distress requires a plaintiff to show '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; (3) and actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'" Pardi v. Kaiser Foundation Hospitals, 389 F.3d 840, 852 (9th Cir. 2004) (quoting Cervantez v. J.C. Penney Co., 24 Cal.3d 579, 156 Cal.Rptr. 198, 595 P.2d 975, 983 (1979)). The first prong requires a showing of conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 852 (quoting Cochran v. Cochran, 65 Cal.App.4th 488, 76 Cal.Rptr.2d 540, 545 (1998)); see also Braunling v. Contrywide Home Loans Inc., 220 F.3d 1154, 1158 (9th Cir. 2000). The Ninth Circuit adheres to the California rule that "it is not enough that the defendant has acted with an intent which is tortious or even criminal, or that he

has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." Pardi, 389 F.3d at 852 (citation omitted).

As Defendants point out, Plaintiff's Complaint contains only one factual allegation against Defendant Houselog; that is,"Defendant HOUSELOG took items off of plaintiff's truck and blamed plaintiff for items missing." Complaint, p. 3, lines 6-7. This sole allegation against Defendant Houselog does not demonstrate extreme and outrageous conduct sufficient to state a cause of action for intentional infliction of emotional distress and Defendant Houselog appears to be fraudulently joined. Although Plaintiff included additional allegations in the motion to remand, the Court does not consider those allegations and makes no determination as to whether or not they would be sufficient to state a claim against Houselog for intentional infliction of emotional distress.

Defendants also argue that because the alleged conduct occurred in the normal course of the employee-employer relationship any alleged emotional distress is within the exclusive purview of the workers' compensation system. Defendants rely on Miklosy v. Regents of Univ. of California, 44 Cal.4th 876, 902-03 (2008) for the proposition that where alleged conduct occurred at the worksite, in the normal course of the employee-employer relationship, workers' compensation is the exclusive remedy for any alleged injuries. Defendants further assert that Houselog allegedly blaming Plaintiff for missing items is a criticism that is a part of the employment relationship and, even if the conduct is characterized as intentional, unfair or outrageous, it is covered by workers' compensation exclusivity provisions. Miklosy, 44 Cal.4th at 902. Defendants acknowledge that there are two exceptions to exclusivity: (1) where the employer's conduct contravenes fundamental public policy or (2) where the employer's conduct exceeds the risks inherent in the employment relationship. Id. at 902. Defendants contend that neither of the exceptions applies.

In this instance, there is no indication that requiring an employee to account for items taken off of a truck falls outside the employer-employee relationship or that the alleged conduct is not covered by the workers' compensation exclusivity provisions. However, it is unnecessary

to decide this issue because Plaintiff does not state a cause of action for intentional infliction of emotional distress against Defendant Houselog.

### **ORDER**

Based on the above, Plaintiff has failed to state a cause of action against Defendant Houselog and the fraudulent joinder of this nondiverse defendant does not defeat jurisdiction. Accordingly, Plaintiff's motion to remand is DENIED. Plaintiff's corresponding request for sanctions also is DENIED.


IT IS SO ORDERED.

Dated:   **August 7, 2009**                            **/s/ Dennis L. Beck**
                                                                    UNITED STATES MAGISTRATE JUDGE